# United States Court of Appeals
## For the First Circuit

Nos. 12-2313, 16-2087

DIANE HAMILTON, on behalf of herself and all other employees
similarly situated; LYNNE P. CUNNINGHAM, on behalf of herself
and all other employees similarly situated; CLAIRE KANE, on
behalf of herself and all other employees similarly situated;
MARIA VICTORIA SORENSEN, Consent to Sue Plaintiff,

Plaintiffs, Appellants,

v.

PARTNERS HEALTHCARE SYSTEM, INC.; PARTNERS COMMUNITY HEALTHCARE,
INC.; THE BRIGHAM & WOMEN'S HOSPITAL; BRIGHAM & WOMEN'S/FAULKNER
HOSPITALS, INC.; MARTHA'S VINEYARD HOSPITAL, INC.; THE
MASSACHUSETTS GENERAL HOSPITAL; MCCLEAN HEALTHCARE, INC.; THE
MCCLEAN HOSPITAL CORPORATION; NANTUCKET COTTAGE HOSPITAL; NEWTON
WELLESLEY HOSPITAL; NEWTON WELLESLEY HEALTHCARE SYSTEM, INC.;
NORTH SHORE CHILDREN'S HOSPITAL, INC.; NORTH SHORE MEDICAL
CENTER, INC.; NSMC HEALTHCARE, INC.; THE SALEM HOSPITAL; UNION
HOSPITAL AUXILIARY OF LYNN, INC.; FAULKNER HOSPITAL, INC.,

Defendants, Appellees,

YOUVILLE HOSPITAL & REHABILITATION CENTER, INC.; JAMES J.
MONGAN, MD; DENNIS D. COLLING,

Defendants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Lynch, Thompson, and Kayatta,
Circuit Judges.

_____

    <u>Patrick J. Solomon</u>, with whom <u>Thomas & Solomon LLP</u> was on brief, for appellants.

    <u>Lisa A. Schreter</u>, with whom <u>Bradley E. Strawn</u> and <u>Littler Mendelson, P.C.</u> were on brief, for appellees.

_____

January 12, 2018

_____

**LYNCH, <u>Circuit Judge</u>**.  This is an appeal from a purported denial of a motion for leave to amend a complaint after certain court proceedings.  We affirm, on the particular facts of this case, concluding that the district court did not abuse its discretion.  Our reasons are best understood from our recitation of the facts.

                              I.

     In September 2009, Diane Hamilton, Lynne P. Cunningham, and Claire Kane ("plaintiffs") filed suit in the District of Massachusetts against a group of healthcare entities allegedly affiliated with Partners Healthcare System, Inc. ("defendants"),[1] alleging that the defendants' compensation practices violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 <u>et seq.</u>, the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 <u>et seq.</u>, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 <u>et seq.</u>[2]  This was one of at least twenty-nine such cases filed by plaintiffs' counsel across the country, including four other cases filed in the

_____

     [1]    Plaintiffs voluntarily dismissed their claims against two hospital executives named as defendants.

     [2]    An additional cause of action for estoppel was dismissed by stipulation of the parties.

District of Massachusetts, all involving virtually identical complaints.[3]  It purported to be brought as a class action.[4]

The complaint stated that the plaintiffs were "[a]t all relevant times . . . employees under the FLSA, employed within this District and resid[ing] within this District," but did not describe which of the defendants actually employed the named plaintiffs and failed to state whether the plaintiffs worked more than forty hours per week.  In total, plaintiffs' complaint listed twenty-seven healthcare facilities associated with the named defendants and more than 100 "affiliated" healthcare facilities.

---

[3]    We have called these lawsuits "hospital compensation cases."  Pruell v. Caritas Christi ("Pruell II"), 678 F.3d 10, 14 (1st Cir. 2012).  Three other hospital compensation cases have reached this court.  In Cavallaro v. UMass Memorial Healthcare, Inc. ("Cavallaro II"), 678 F.3d 1 (1st Cir. 2012), we affirmed the district court's dismissal of the plaintiffs' state law claims but remanded to allow plaintiffs "one last amendment" with respect to their federal claims.  Id. at 10.  In Pruell II, we affirmed the district court's dismissal of the plaintiffs' FLSA claim but remanded to provide plaintiffs with "a final opportunity to file a sufficient complaint."  678 F.3d at 15.  And in Manning v. Boston Med. Ctr. Corp. ("Manning II"), 725 F.3d 34 (1st Cir. 2013), we vacated the district court's dismissal of certain claims against two of the defendants, affirmed its dismissal of similar claims against a third defendant, and upheld its denial of plaintiffs' request for leave to amend their complaint a second time to correct remaining deficiencies.  Id. at 39, 42, 61.

[4]    Plaintiffs later filed a separate action in state court, asserting state law claims based on the same facts underlying their federal claims.  The defendants removed the state action to federal court in October 2009.  The state law claims were ultimately dismissed along with the federal claims.  The district court's dismissal of the state law claims is not on appeal.

In October 2009, defendants filed an answer to plaintiffs' complaint, along with a motion to dismiss plaintiffs' RICO claim. After briefing on the motion to dismiss, but before the district court ruled on the motion, the parties notified the district court that they had entered into a structured mediation process. The mediation resulted in two successive motions for preliminary approval of class and collective action settlements, which were heard by the district court. On December 27, 2010, the district court rejected the first proposed settlement, stating, inter alia, that there was potential for "fairly substantial conflict among class members" because the contemplated settlement could not account for potential disparities in the damages suffered by class members. Several months later, the district court rejected an amended settlement proposal on March 9, 2011, reiterating its concern regarding class conflict and stating that it could not find the proposed settlement to be fair, adequate, and reasonable. The plaintiffs were thus on notice of potential problems as to the certification of a putative class based on their pleadings. Settlement negotiations broke down after the district court's second ruling.

On April 1, 2011, defense counsel sent a letter to plaintiffs' counsel with a number of requests, three of which related to plaintiffs' federal claims as stated in their complaint. First, defense counsel insisted that plaintiffs' counsel dismiss

all defendants, remove references in the complaint to "Health Centers" and "Affiliates" that did not employ any of the named plaintiffs, and file an amended complaint containing allegations sufficient to establish employment relationships between the named plaintiffs and each defendant. To support this request, defense counsel cited Manning v. Boston Medical Center Corp. ("Manning I"), No. 09-11463, 2011 WL 796505 (D. Mass. Feb. 28, 2011), aff'd in part, vacated in part, remanded, 725 F.3d 34 (1st Cir. 2013),[5] which dismissed a virtually identical complaint based in part on its failure to identify which defendant the named plaintiffs worked for, id. at *1. Defense counsel also cited Nakahata v. New York-Presbyterian Healthcare System, Inc., No. 10 Civ. 2661, 2011 WL 321186 (S.D.N.Y. Jan. 28, 2011), aff'd in part, vacated in part, remanded, 723 F.3d 192 (2d Cir. 2013),[6] which found another substantially similar complaint to be deficient because of its "failure to specify which entity, among the many named defendants, employed the respective plaintiffs," id. at *4.

---

[5]     Manning I was later affirmed in part and vacated in part by this court in Manning II, which also upheld the district court's denial of the plaintiffs' request for leave to file a second amended complaint. 725 F.3d at 61; see supra note 3.

[6]     The Second Circuit later affirmed Nakahata with respect to its dismissal with prejudice of, inter alia, the plaintiffs' FLSA and RICO claims, but remanded to allow the plaintiffs to replead their FLSA claims. Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 195 (2d Cir. 2013).

Second, the letter urged plaintiffs' counsel to dismiss their RICO and ERISA claims, which defense counsel contended were "unfounded."  As support, defense counsel cited seven district court cases dismissing identical RICO claims, including three District of Massachusetts cases, and two district court cases dismissing identical ERISA claims, including Manning I, in which the court found that the plaintiffs' ERISA claims "fail[ed] as a matter of law," 2011 WL 796505, at *2.

Third, the letter requested that plaintiffs' counsel amend and replead the FLSA claims to comply with Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Defense counsel warned plaintiffs' counsel that other district courts had dismissed nearly identical claims, citing Manning I, which described the dismissed complaint as an "aggregation of conclusory statements and general allegations," 2011 WL 796505, at *2; Pruell v. Caritas Christi ("Pruell I"), No. 09-11466, 2010 WL 3789318 (D. Mass. Sept. 27, 2010), which dismissed the plaintiffs' FLSA claims for failing to allege the plaintiffs' weekly wages and hours worked or even that the plaintiffs worked more than forty hours per week, id. at *3; and DeSilva v. North Shore-Long Island Jewish Health System, Inc., 770 F. Supp. 2d 497 (E.D.N.Y. 2011), which dismissed the plaintiffs' FLSA claims for failing to satisfy the "minimal burden" of providing "some approximation of the overtime hours that

[plaintiffs] worked," and for failing to identify the type and nature of the purportedly unpaid work or training, id. at 510.

Despite the letter, plaintiffs' counsel informed defense counsel on April 12, 2011 that they had no intention of repleading any of their claims or providing any more specificity prior to a status conference. Given plaintiffs' statement that they would not seek to replead, defendants filed a motion for judgment on the pleadings addressed to all of plaintiffs' claims on April 19, 2011. Plaintiffs opposed the motion and, in their memorandum in opposition, included a request to replead "[s]hould the Court grant defendants' motion."

Months later, the district court held a scheduling conference on June 9, 2011. By this time, the district court had reviewed a total of 58 pages of pleadings and dispositive motions, 145 pages of briefing associated with the dispositive motions, 125 pages of motions to approve settlement proposals, and 612 pages of relevant exhibits.[7] During the conference, the following exchange occurred between the district court and plaintiffs' counsel:

> THE COURT: . . . You should understand I'm not going to permit amended pleadings in this matter. These are the pleadings. We have been around on this enough, so this case will rise and fall on the state of the pleadings after two years.

---

[7] We assume that the district court had read the documents associated with the motion for judgment on the pleadings, which had been filed weeks earlier.

[PLAINTIFFS' COUNSEL]: If I may be heard on that, your Honor, just briefly, very briefly, I would say.

THE COURT: What do you want, do you want to rebrief the thing altogether?

[PLAINTIFFS' COUNSEL]: The case has taken a long time to get to a preliminary motion to dismiss stage, and the parties spent a long time in mediation, and as part of that mediation, we agreed as a courtesy to the defendants to dismiss the individual defendants. That was never approved by the Court, so the individual defendants are still around, but there certainly has been a lot of case law change in the last two years, particularly in the District of Massachusetts.

THE COURT: But you were afforded an opportunity by the defendants to tidy up your pleadings and afforded that opportunity in April, and so now you tell me when I set it down for hearing for judgment on the pleadings that you want to be able to take my temperature on the judgment on the pleadings and then file another complaint?

[PLAINTIFFS' COUNSEL]: We didn't feel that we would be in a position with the Court, the defendants were asking us to do that. We didn't believe that the Court would entertain an amended complaint while the motion on the pleadings had been fully briefed.

THE COURT: Well, what makes you think that I'll do it afterwards? Look it, I have taken several bites of this case. I've seen it in what I consider to be inappropriate posture for class settlement. I saw it originally in a motion to dismiss posture, but this is not going to be Shahrazad, so you now think you want to file an amended complaint?

[PLAINTIFFS' COUNSEL]: We would anticipate that the Court would have since the motion was fully briefed, if there was --

- 8 -

THE COURT: No, I asked you, is it your view that you now are not satisfied with the pleading you've submitted?

[PLAINTIFFS' COUNSEL]: Well, in light of the recent decisions that have come down, particularly yesterday, from Judge Saylor,[8] we would request the ability to submit an amended complaint.[9] All of the questions raised by the Court there are very easy for us to remedy, and it's far more efficient for the Court and for --

THE COURT: No, let me tell you, efficiency is when I say you don't get a chance to replead, and I'm about at that point. Now if you're telling me that you want to replead, I'll consider it, but this is it. You've had a great deal of litigation in a number of different fora. These are not new issues to be perfectly candid, they've been out there for some period of time, and I don't really fully understand why I should permit this.

[PLAINTIFFS' COUNSEL]: Well, your Honor --

THE COURT: What are you going to do? What is it that provided an epiphany in Judge Saylor's decision?

[PLAINTIFFS' COUNSEL]: Well, the complaint was dismissed with prejudice. That was the defining moment. The courts have liberally allowed amendments to pleading. When the case was initially filed, we had numerous cases where on these very similar pleadings, as the

---

[8] Plaintiffs' counsel was referring to Cavallaro v. UMass Memorial Health Care Inc. ("Cavallaro I"), No. 09-40152, 2011 WL 2295023 (D. Mass. June 8, 2011), vacated sub nom., 678 F.3d 1 (1st Cir. 2012), which had been issued the prior day and which had dismissed with prejudice substantially identical claims to those pressed by plaintiffs here. See id. at *6-7.

[9] Plaintiffs could no longer amend as a matter of course under Fed. R. Civ. P. 15(a)(1) because more than twenty-one days had passed since defendants filed their answer.

- 9 -

defendants point out, had been successful. As the case law has been developing, courts are now raising the standard, it appears, as to what level of detail you need, but the situation that we're in --

THE COURT: What are you going to do? What is this amended complaint going to do?

[PLAINTIFFS' COUNSEL]: It would answer the questions that the courts have raised, it would provide additional detail as to who the defendants are. We believe that we've sufficiently alleged that the defendants are this entity, but we can specifically allege, as we have in the 20 affidavits that were submitted with the notice motion, where these individuals worked, who supervised them and the type of work they did. The evidence in this case is going to be extremely strong on behalf of these clients.

THE COURT: Look it, you have to make it over the pleading hurdle, and now I schedule it for a hearing on your pleadings, and you view this as kind of an interim undertaking that we'll see how this one turns out and then we'll ask for another pleading. You have to come to rest on your pleadings, and if you're telling me that if you have not come to rest on your pleadings, I want to understand what it is that you have recently learned that you didn't know before.

[PLAINTIFFS' COUNSEL]: That the district courts in Massachusetts are looking for more specificity.

THE COURT: And the Southern District.

[PLAINTIFFS' COUNSEL]: And the Southern District of New York are looking for more specificity as to the defendant that you specifically worked for, which location you worked at of this large entity, specifically perhaps the number of hours over 40 that you

worked, what your job title was, details like that.

Those are details that we in the notice pleading that we've done in the past has never been subject to scrutiny and has been accepted.

THE COURT: Of course it has, it's been subject to scrutiny throughout, it was subject to scrutiny by Judge Zobel in <u>Manning</u>, it was subject of scrutiny by Judge Saylor, has been for some time. This is no big surprise, <u>Iqbal</u> has been around for awhile now, and this problem, which is a significant one, has been out there for some time, so I'm a little perplexed about the impact that this has on judicial efficiency.

At the end of the scheduling hearing, after hearing from defense counsel, the district court engaged in the following exchange with the parties:

THE COURT: Well, I'm not going to permit the amendment. It's going on this complaint. You've had plenty of time. You've been put on notice of potential deficiencies here including a very detailed letter from the defendants calling to your attention their intention to file judgment on the pleadings, and you ignored it on the benighted assumption that there was going to be some continued opportunity for resurrection. This is the pleading. I'll evaluate this pleading. If I think it is insufficient, I'll dismiss, enter judgment on it, but there's not going to be a repleading at this stage after all of this.

So we're on for August 3rd. Is there anything else that we need to take up here?

[DEFENSE COUNSEL]: Not on our behalf, your Honor.

- 11 -

> [PLAINTIFFS' COUNSEL]: Not on our behalf, your Honor. Please note my exception to the Court's ruling.
>
> THE COURT: Well, I haven't had a pleading submitted to me, but I'm telling you ahead of time that having had this in front of me, that's what I'm going to do. Now if you want to test it by filing a new pleading, I suppose you can. That's up to you. It's not as if you haven't filed lots of paper, but this is a fairly serious matter to file late like this and not bother to take the time to plead it as fully as the developing case law suggests and to wait until the last moment to hold out the prospect that perhaps you will in two weeks. Not acceptable. We're in recess.

After the hearing, a docket entry was entered entitled "ELECTRONIC Clerk's Notes for proceedings held before [the district court]," stating, inter alia, that "Plaintiff's oral Motion for Leave to File an Amended Complaint is DENIED."

Despite the court's invitation, plaintiffs failed to file a motion for leave to amend with a new pleading between the June 9, 2011 scheduling conference and the August 3, 2011 hearing on defendants' motion for judgment on the pleadings, which had been scheduled at the June conference. At the August hearing, the district court noted that plaintiffs had "plenty of opportunity to assess the shortcomings" of their complaint, but had failed to seek leave to file an amendment. The court stated that, for this reason, it would rule on defendants' motion on the basis of the complaint as it stood. The court did not rule on the motion for

judgment on the pleadings for over a year.  Plaintiffs did not seek leave to amend in the interim.

On September 30, 2012, the district court issued an electronic order granting the defendants' motion for judgment on the pleadings as to all of plaintiffs' claims.  The court explained the rationale for its September 2012 electronic order in a memorandum and order issued nearly four years later on July 21, 2016.[10]  In its explanation, the court recounted that, during the June 9, 2011 scheduling conference, plaintiffs' counsel had "voiced the possibility that [plaintiffs] might seek leave to amend, but . . . never followed through with a proper motion to amend."

## II.

Plaintiffs argue on appeal that the district court's response to their June 9, 2011 oral request is properly reviewable, despite their not having filed a written motion for leave to amend, because the court heard from both parties and said that it would not permit plaintiffs to amend their complaint if they were to file a formal motion.  Plaintiffs also argue that the district court erred when it dismissed their complaint with prejudice.

---

[10]   The court also granted defendants' motion for judgment on the pleadings as to plaintiffs' state law claims in a separate memorandum and order issued that same day.

- 13 -

We will assume, without deciding, that plaintiffs are correct with respect to the reviewability of their June 9, 2011 oral request, so we move to the merits of their challenge.

We review a district court's denial of a motion for leave to amend for abuse of discretion, "deferring to the district court for any adequate reason apparent from the record." Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 418 (1st Cir. 2007) (quoting Resolution Tr. Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994)). Based on the cumulative thrust of the following reasons, we find no such abuse here.

First, by no later than April 1, 2011, plaintiffs were admittedly fully aware of the defects that at least nine district courts had found in their pleading.[11] Defense counsel highlighted

---

[11] Prior to plaintiffs' announced refusal to amend on April 12, 2011, there were at least six district court cases dismissing similar FLSA claims filed by plaintiffs' counsel, at least eight district court cases dismissing similar RICO claims filed by plaintiffs' counsel, and at least five district court cases dismissing similar ERISA claims filed by plaintiffs' counsel. See DeSilva, 770 F. Supp. 2d at 547-48 (dismissing FLSA, RICO, and ERISA claims); Manning I, 2011 WL 796505, at *3 (same); Sampson v. Medisys Health Network, Inc., No. 10-CV-1342, 2011 WL 579155, at *10 (E.D.N.Y. Feb. 8, 2011) (dismissing FLSA and RICO claims); Nakahata, 2011 WL 321186, at *3-5 (same); Pruell I, 2010 WL 3789318, at *5 (dismissing FLSA, RICO, and ERISA claims); Wolman v. Catholic Health Sys. of Long Island, No. 10-CV-1326, 2010 WL 5491182, at *7 (E.D.N.Y. Dec. 30, 2010), aff'd in part, rev'd in part sub nom. Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106 (2d Cir. 2013) (dismissing FLSA and RICO claims); Cavallaro v. UMass Mem'l Health Care Inc., No. 09-40152, 2010 WL 3609535, at *1 (July 2, 2010) (dismissing RICO claim); Kuznyetsov v. W. Penn Allegheny Health Sys., Inc., No. 9-379, 2010 WL 597475, at *7 (W.D. Pa. Feb. 16, 2010) (dismissing RICO and ERISA claims);

- 14 -

all of these defects and demanded correction.  And plaintiffs'
counsel themselves later admitted that there had been "a lot of
case law change" in the two years since the suit had been filed.

Second, plaintiffs acknowledged before the district
court that it would have been "very easy" for them to eliminate
the defects in their complaint.

Third, rather than filing a motion for leave to amend
with some modicum of dispatch, plaintiffs delayed -- waiting until
June to even broach the subject directly with the court.[12]

Fourth, and most importantly, when asked point blank why
they did not do what they say they could have done upon receiving

_____

Camesi v. Univ. of Pittsburgh Med. Ctr., No. 09-85J, 2010 WL
235123, at *1 (W.D. Pa. Jan. 11, 2010) (dismissing ERISA claims).
We assume plaintiffs' counsel was familiar with these rulings in
their other cases.  Moreover, defense counsel's April 1, 2011
letter specifically referenced many of these cases.

[12]    We do not count the period of the settlement negotiations
in assessing the period of delay.  Plaintiffs argue that their
settlement negotiations were "a valid reason to 'delay' seeking
leave to file an amend[ed] complaint."  But the parties' settlement
discussions and exploration of class certification between the
filing of plaintiffs' complaint on September 3, 2009 and the
termination of mediation on March 30, 2011 provided plaintiffs'
counsel with an opportunity to decide whether and how to change
its pleadings.
         In any case, plaintiffs' counsel's failure to even bring
up the subject of an amended complaint until the scheduling
conference -- despite being put on notice of their complaint's
deficiencies by April 1, 2011 -- itself constituted delay that
prejudiced defendants and the district court.  Defendants had to
file nearly 300 pages in support of their motion for judgment on
the unamended pleadings, which the district court had to read and
consider, and was preparing to rule on by the time of the
scheduling conference.

- 15 -

defense counsel's letter, plaintiffs' counsel gave the district court an explanation that could not have been correct -- i.e., that they "didn't believe that the Court would entertain an amended complaint while the motion on the pleadings had been fully briefed," which, of course, it had not been. As a result, the district court did not err in concluding that plaintiffs intentionally delayed in an effort to force the defendants to brief a motion and the court to do the work of deciding the motion, all based on a complaint that plaintiffs were apparently treating as a risk-free trial balloon. We emphasize that it is not so much the length of plaintiffs' delay but rather the manner in which they seem to have exploited the delay that justifies the district court's ruling. Cf. Kay v. N.H. Democratic Party, 821 F.2d 31, 34 (1st Cir. 1987) (finding that three months constituted undue delay where plaintiff failed to offer any justification for the delay); Villanueva v. United States, 662 F.3d 124, 127 (1st Cir. 2011) (same finding for a delay of four months).

Finally, when the court -- after explaining why it would not allow amendment -- nevertheless expressly offered plaintiffs an opportunity to file a formal motion with an amended pleading when the issues were fresh, plaintiffs decided not to do so. As a result, we have no proposed pleading to consider.

On such a record, we cannot accept the contention that the district court was required to allow leave to amend. Affirmed.

**-Dissenting Opinion Follows-**

**THOMPSON**, **Circuit Judge, dissenting.** I disagree with the result reached by my colleagues in the majority, and so I write separately to explain why I believe the district court abused its discretion when it denied plaintiffs' motion for leave to amend the complaint.[13]

I am well aware that we afford the district court very deferential abuse-of-discretion review when it comes to motions for leave to amend. But Federal Rule of Civil Procedure 15 reflects a liberal standard for motions to amend, see Torres-Álamo v. Puerto Rico, 502 F.3d 20, 25 (1st Cir. 2007), one that requires the court to "freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), and "this mandate is to be heeded," Foman v.

---

[13] The majority assumes without deciding that the other big issue in this case -- whether the oral motion for leave to amend was valid and therefore reviewable -- is indeed reviewable. But I believe this question deserves a decision on its merits. We have said that "[t]here may be exceptional circumstances in which a request to amend will become the functional equivalent of a motion to amend." Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 327 (1st Cir. 2008) (examining and finding insufficient the undeveloped request plaintiffs had made in their written opposition to a dispositive motion). Here, this motion to amend was valid: Plaintiffs' counsel engaged in a lengthy, on-the-record back-and-forth with the district court when he orally moved to amend the complaint; defense counsel had an opportunity to respond; the court's repeated oral denial of leave to amend signaled that it considered, assessed, and rejected the motion; and the district court's written denial of the motion for leave to amend appeared on the docket that very same day. And so, I believe this case presents just the sort of "exceptional circumstances" that make plaintiffs' motion, if not proper all on its own, "the functional equivalent" of a proper motion, and our decision should reflect that conclusion. See id.

<u>Davis</u>, 371 U.S. 178, 182 (1962) (citing 3 Moore, Federal Practice §§ 15.08, 15.10 (2d ed. 1948)).

First, some context, because the moment at which the relevant procedural history of this case played out is critical. The complaint was filed in 2009, in the wake of <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), and <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662 (2009), both of which rejected the sixty-year-old standard set forth in <u>Conley</u> v. <u>Gibson</u>, 355 U.S. 41, 47 (1957) (explaining that pleadings need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" to survive a motion to dismiss), and which also injected uncertainty into the standard for reviewing complaints.[14]  In the two years that followed plaintiffs' 2009 complaint filing (leading up to plaintiffs' eventual motion to amend), how the Supreme Court's new pleadings plausibility test should be applied was in flux.  During that time, what was clear was that the Court had infused the standard with some subjectivity, and application of the new standard at times appeared to be at the mercy of each different

---

[14]    It's 2018, and 2009-11 seems an age ago.  In this case, we mustn't forget that the issues were happening between 2009 and 2011, not years later.  The fourteen-plus months between the hearing on the motion for judgment on the pleadings (August 3, 2011) and the electronic order granting the motion for judgment on the pleadings (September 30, 2012), combined with the passage of nearly four years between the September 30, 2012, electronic order and the issuance of the explanatory memorandum and order (July 21, 2016) tells the story of how we wound up so far removed from 2011.

lower court judge and his or her personal perspective, experience, and common sense.  See Iqbal, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").[15]  Against this backdrop, the complaint in this case inevitably would face some adversity.

Next, let's move to the moment when plaintiffs were convinced it was time to move to amend:  June 2011.  This turning point came courtesy of Cavallaro v. UMass Mem'l Health Care Inc., No. 09-40152-FDS, 2011 WL 2295023 (D. Mass. June 8, 2011), vacated, 678 F.3d 1 (1st Cir. 2012), issued the day before the status conference.  The district court there, in an about-face, dismissed (with prejudice) claims very similar to those in the complaint at

---

[15]    Motions to dismiss complaints swept the nation during this time; notably higher filing rates post-"Twiqbal" crossed disciplines and cluttered judges' desks.  See, e.g., JOE S. CECIL ET AL., FED. JUDICIAL CTR., *Motions to Dismiss for Failure to State a Claim after* Iqbal*:  Report to the Judicial Conference Advisory Committee on Civil Rules* 8, 9 (Mar. 2011), available at http://www.uscourts.gov/sites/default/files/motioniqbal_1.pdf (recording a marked increased rate of challenges to the sufficiency of complaints in the post-Iqbal period (2009-2010) as opposed to the pre-Twombly period (2005-2006)); see also Jonah B. Gelbach, Note, *Locking the Doors to Discovery? Assessing the Effects of* Twombly *and* Iqbal *on Access to Discovery*, 121 YALE L. J. 2270, 2291 (2012) (observing that "Twombly and Iqbal were accompanied by a substantively large increase in the rate at which defendants filed Rule 12(b)(6) MTDs").  I note that the Supreme Court tasked reviewing judges to draw on judicial experience (drumroll for that conjunctive word "and") and common sense, so a newly appointed judge was to drink from what well?

issue here. But understand that, unlike here, those plaintiffs already had been afforded multiple opportunities to amend the complaint. Nonetheless, this Cavallaro dismissal served as the impetus for plaintiffs' June 9, 2011 oral motion. Plus, as it turns out, this court on appeal decided the Cavallaro plaintiffs were entitled to yet further amendment. Cavallaro, 678 F.3d at 10 (concluding that there had been no "prior abuse of the amendment process," and "one last amendment should be permitted, if the plaintiffs are so minded").

The majority explains that "any adequate reason apparent from the record" will support the district court's denial of the motion to amend. Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 418 (1st Cir. 2007) (quoting Resolution Tr. Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994)). Five reasons, to be taken cumulatively, are offered: (1) defendants' April 1, 2011 letter made plaintiffs "fully aware" of the complaint's potential defects, and other courts had found the complaint lacking in specificity; (2) plaintiffs told the district court it would have been "very easy" to correct the complaint; (3) plaintiffs delayed from April to June before bringing up the subject of amendment; (4) plaintiffs exploited the delay in moving to amend; and (5) plaintiffs ignored an express offer from the district court to file a formal motion to amend.

Not only do I not see these as adequate reasons, even in the aggregate, but also I see some of them as mischaracterizations of the record, this case, and our case law.  I take each in turn.

Before I do, I pause to emphasize that the "adequate reason" here shouldn't be just any conceivable reason, but rather the reason must fall within parameters described by our Supreme Court:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

Foman, 371 U.S. at 182 (emphasis added).  I read this to mean that our high court expects the denial of a motion to amend to be supported by one of these reasons or something akin to these reasons.  Otherwise, "as the rules require," leave to amend is to be "freely given."  Id.

Onward.

## 1.  The import of defendants' April 1, 2011 letter and other courts' decisions

The majority writes that plaintiffs were aware of the defects in their complaint because of the April letter sent by

- 22 -

defendants, and other courts found problems with the complaint as well.  A few points about this, starting with the April letter.

According to the majority, defendants demanded that the complaint's defects be corrected.  True:  The letter was a take-it-or-leave-it, unequivocal demand that plaintiffs amend some aspects of the complaint and, importantly, dismiss other pled causes of action with prejudice.[16]  But such a demand by defendants does not compel plaintiffs to address the perceived defects when, upon their own independent evaluation of their pleadings and the moving-target case law, they genuinely and in good faith disagreed with defendants' position.  The majority points out that multiple district courts took issue with the complaint, but, critically, no appellate court had yet weighed in (more on that below).  Meanwhile, I am unable to find, and the majority does not point to, any case law suggesting that one side in litigation can or should be compelled to do what the other side has suggested (in this case, kowtow to the demands in defendants' letter and immediately set to work on crafting an amended complaint) where clear and binding precedent is not in place and where reasonable

---

[16]  As for that invitation, it was worded as follows: " . . . Defendants request that Plaintiffs take the steps below . . .  If you refuse to do so, we will move to dismiss these claims and seek an appropriate award of fees and costs."  Defendants later used different but equally clear language in the letter when they explained that if plaintiffs did not "comply" and "execute these requests," defendants would seek dismissal and Rule 11 fees.

legal minds could differ.  And I certainly see nothing to support the notion that a side presumably proceeding in good faith can later be punished for not doing what the other side demanded. Similarly, I can find no legal support for the notion that one side can or should be held to some sort of higher notice because the other side flagged some perceived issues.  The majority's reliance on this letter imbues the letter with a heightened importance not supported by our jurisprudence, and I fear it sends the wrong signal to litigants who may be on the ultimately losing end of a validly contested legal dispute.

Moreover, I find nothing in the record to suggest plaintiffs did not have a good faith basis to believe their complaint was viable as drafted, particularly since there was no appellate authority from any circuit opining as to whether the complaint was, in fact, sufficient. Plaintiffs, in defending their own legal arguments rather than adopting those of their adversaries, did not act unreasonably.

On to the majority's other reason in support of the denial of leave to amend:  Other courts were taking issue with this complaint.  Yes, some district courts had problems with the complaint.  Others did not:  Obviously presumed by some named defendants to be adequate, the complaint went entirely uncontested in some of the hospital compensation cases.  See, e.g., Woolfson v. Caregroup, Inc., No. 1:09-cv-11464, 2010 WL 10063268 (D. Mass.

- 24 -

Sept. 13, 2010); Meyers v. Crouse Health Sys., Inc., 274 F.R.D. 404 (N.D.N.Y. 2011); Hamelin v. Faxton-St. Luke's Healthcare, 274 F.R.D. 385 (N.D.N.Y. 2011); see also Pruell v. Caritas Christi (Pruell II), 678 F.3d 10, 14 & n.2 (1st Cir. 2012) (noting that not all courts "have expressed their displeasure and found the complaints inadequate").

Bear with me while I develop this point. Even in the cases where the complaint was contested and amendment was sought, the results were not dismissals without any opportunity to amend. For example, in another one of these hospital compensation cases decided by us, Pruell II, we took a lenient approach that aligned with the spirit of our rules of amendment. The story goes as follows: The plaintiffs' complaint was dismissed, but with leave to amend, Pruell v. Caritas Christi, No. 09-11466-GAO, 2010 WL 3789318 (D. Mass. Sept. 27, 2010); thereafter, the amended complaint was deemed insufficient, and the complaint was again dismissed, this time without leave to amend, Pruell v. Caritas Christi, No. 09-11466-GAO, 2010 WL 3789318 (D. Mass. July 13, 2011). But on appeal, we cut the plaintiffs a good deal of slack because, as I have already discussed, the post-Twombly and -Iqbal timeframe in question (the same timeframe at issue in the instant case) presented a hot mess for litigants trying to navigate it: "The precedents on pleading specificity [we]re in a period of transition, and precise rules [would] always be elusive because of

- 25 -

the great range and variations in causes of action, fact-patterns and attendant circumstances." Pruell II, 678 F.3d at 15. "[S]ome latitude," we said, "has to be allowed where a claim looks plausible based on what is known." Id.

Here, the majority departs from the Pruell II model -- and it does so in a case where, unlike Pruell II with its multiple amendment requests, plaintiffs sought leave to amend only one time.

Aware of the contested defects or not, plaintiffs should have been afforded leave to amend, just as leave to amend should have been allowed in Pruell II (hence our remand for that purpose).[17] Defendants' letter and some courts coming down on the complaint do not negate the fact that Pruell II shows us that the specificity in these complaints remained a moving target, and it wasn't totally clear yet what worked and what didn't. Id. at 14-15.

And, what's more, I do not think this reason is one (or similar to one) that was contemplated by the Foman Court when it laid out circumstances in which it would be appropriate to deny leave rather than freely grant it, "as the rules require." Foman, 371 U.S. at 182.

---

[17] And don't forget, we did the same thing in Cavallaro v. UMass Mem'l Healthcare, Inc., when we remanded to allow plaintiffs "one last amendment." 678 F.3d 1, 10 (1st Cir. 2012).

- 26 -

## 2. Ease with which plaintiffs could provide more specificity

The majority's next reason in support of the denial of leave to amend is that plaintiffs indicated at the status conference in June 2011 that it would be "very easy" to eliminate the complaint's defects.  I am not persuaded by this either.

As an initial matter, let me once again say that plaintiffs had, they believed, a good faith basis for not seeking amendment prior to this conference, and they planned to stick to their guns and their own legal arguments in support of the complaint's sufficiency.  That changed when Cavallaro came along the very day before that conference.

Context is important.[18]  Here, plaintiffs' counsel did indeed explain that it would be "very easy" to remedy the complaint -- but he specifically said he could easily remedy "[a]ll of the questions raised by the Court there."  (Emphasis added.)  The "there" he refers to is the decision from Judge Saylor (Cavallaro) that came out the day before.  So, in context, it became "easy" only after the Cavallaro decision, which triggered plaintiffs' decision to move to amend after all.

Lastly, as with the previous reason offered in support of the denial of leave to amend, I do not think the ultimate ease

---

[18]    To that end, and for completeness, I append to the dissent the entire transcript of this conference so the interested reader can take a look and make his or her own assessment of the exchange.

- 27 -

with which plaintiffs may have been able to fix the complaint falls under what the Foman Court had in mind when it spoke of denying leave to amend for "justifying reasons." 371 U.S. at 182.

### 3. Plaintiffs waited until June to discuss amendment with the district court, resulting in prejudice

Another reason the majority offers is that plaintiffs failed to file a motion to amend "with some modicum of dispatch," instead delaying, or "waiting until June to even broach the subject directly with the court." The majority elaborates: Plaintiffs' failure to bring up the subject of amendment, even though they were "put on notice of their complaint's deficiencies by April 1, 2011," was a "delay that prejudiced defendants and the district court." I disagree.

Remember that not just any delay will do on this topic -- the delay must be undue. Foman, 371 U.S. at 182. But in any event, in my view, the subject two-month period falls short of constituting delay, undue or otherwise. Cf. Hagerty ex rel. United States v. Cyberonics, Inc., 844 F.3d 26, 34 (1st Cir. 2016) (reasoning that plaintiff's "listless approach toward amending" -- waiting 13 months -- constituted undue delay); Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 538 (1st Cir. 2011) (finding undue delay when motion to amend was filed "nearly a year after" a motion to dismiss was filed); see also Torres-Álamo, 502 F.3d at 25-26 (reversing district court's denial of a motion to

- 28 -

amend because the motion was filed less than two months after the answer and six months after the initial complaint).  Besides, even assuming it was an undue delay, plaintiffs have a supportable explanation for it:  They disagreed with the arguments advanced in defendants' April letter, they wanted to stick to their own legal arguments, and they thought it would be premature to amend when no appellate court had affirmed any district court's take on the complaint.

And let's take another step back.  At the risk of sounding like a broken record, it is important to recall and emphasize the spirit and policy behind our rules of amendment. Not only is liberality favored for good reason,[19] but also we must bear in mind that a fundamental reason we take issue with protracted delay in filing a motion to amend is the "attendant burdens on the opponent and the court" that it can create. Somascan, Inc. v. Philips Med. Sys. Nederland, B.V., 714 F.3d 62,

---

[19]    Liberality is so favored, in fact, that Rule 15(b) permits pleading amendment in some instances during and after trial.  Fed. R. Civ. P. 15.  And by the way, the policy behind this liberality stems from our preference to have disputes resolved on the merits.  See, e.g., Coon v. Grenier, 867 F.2d 73, 76 (1st Cir. 1989) (citations omitted) (observing the important "philosophy that actions should ordinarily be resolved on their merits"); Richman v. Gen. Motors Corp., 437 F.2d 196, 199 (1st Cir. 1971) (emphasizing the strong "policy of the law favoring the disposition of cases on their merits"); see also Fed. R. Civ. P. 1 (instructing that the civil rules "should be construed . . . to secure the just . . . determination of every action and proceeding").

64 (1st Cir. 2013) (per curiam) (quoting <u>Steir</u> v. <u>Girl Scouts of the USA</u>, 383 F.3d 7, 12 (1st Cir. 2004)).[20]

The majority says the two-month "delay" in seeking amendment prejudiced defendants and the district court, so let's talk prejudice and burdens. I cannot see the prejudicial effect suffered by defendants -- it was plaintiffs' first request to amend, and the actual litigation of this case was in its infancy (with settlement negotiations having broken down only a few months earlier, discovery wasn't even underway, nor was trial even a glimmer in anyone's eye). And it's not as though defendants can say they didn't know what plaintiffs' claims would be; not only had they spent ample time discussing the claims during mediation, but also, as defendants are quick to point out, these same compensation issues were being delved into all over the country,

---

[20]    <u>See also</u> <u>Frappier</u> v. <u>Countrywide Home Loans, Inc.</u>, 750 F.3d 91, 96 (1st Cir. 2014) (explaining that concern arises when additional discovery or re-opening discovery would be required due to the proposed amendment); <u>Steir</u>, 383 F.3d at 12-13 (taking issue with the proposed amendment because it came at "the penultimate phase of the litigation" and "would have required the re-opening of discovery," conducting a new deposition, seeking new records, postponing the summary-judgment hearing, "and almost certainly, the delay of any trial"); <u>Acosta-Mestre</u> v. <u>Hilton Int'l of Puerto Rico, Inc.</u>, 156 F.3d 49, 52 (1st Cir. 1998) (approving denial of motion to amend because of undue delay and undue prejudice -- "by the time of the motion for leave to amend, nearly all the case's pre-trial work was complete"); <u>Grant</u> v. <u>News Grp. Boston, Inc.</u>, 55 F.3d 1, 5-6 (1st Cir. 1995) (agreeing that denial of motion to amend was appropriate when the motion came after discovery was complete, and the opposing party was almost done with its motion for summary judgment and "was well into its trial preparation").

and defense counsel represented many of the defendant-entities in those suits.

The majority writes that defendants' burden is that they had to file a twenty-page motion for judgment on the pleadings and they were forced to file many documents in support of that motion. I find no precedent which supports the proposition that when a party opponent takes a contrary, but defensible, legal position which generates the filing of a single dispositive motion, that such amounts to prejudice or the kind of burden that would justify denial of leave to amend. This is litigation, plain and simple -- it is not the kind of unwarranted "attendant burden[] on the opponent" that our case law disfavors. Somascan, Inc., 714 F.3d at 64.

As for the prejudicial effect on the court, I am similarly at a loss. The majority writes that the district court had to read and consider the motion for judgment on the pleadings and "was preparing to rule on [that motion] by the time of the scheduling conference."[21] First, and once again, that is the nature of litigation and what judges are called upon (and paid a decent

_____

[21] The majority provides a list of pleadings, motions, and exhibits dating back to October 2009 that the district court had reviewed in advance of the June 9, 2011 conference. I see this as beside the point -- the routine work the district court had put in on this litigation prior to the conference is irrelevant as to the supposed burden and prejudice the majority says resulted from the two-month span of time (or the "delay") between April and June of 2011.

salary) to do. Judges review motions filed and, indeed, eventually rule on those motions. Second, there is no (zilch) record support for the majority's assumption that the district court had already taken a deep dive into the motion for judgment on the pleadings (as of the date of the June status conference, no hearing date had been set, and, all told, the hearing would not take place for another two months),[22] nor is there evidence that the court was somehow already "preparing to rule" on a motion that had not even been scheduled for hearing. This rank speculation is not the stuff of burden or prejudice.

### 4. Exploitation of the "delay"

Next, my colleagues take issue with what they characterize as plaintiffs' exploitation of their own supposed delay, and this is offered as the penultimate reason supporting the conclusion that there was no abuse of discretion by the district court judge. I don't see things the same way.

The majority begins its explication by writing "when asked point blank why they did not do what they say they could have done upon receiving defense counsel's letter, plaintiffs' counsel gave the district court an explanation that was simply

---

[22]  In fact, the district court judge told the parties "I do want to stay discovery in the further briefing on the certification motions until I've sorted through the state of the pleadings here." (Emphasis added.) From this, it is most reasonable to infer that the district court judge definitely had not done a deep dive on the motion for judgment on the pleadings.

untrue." A quick read of the transcript, however, puts things in context and shows this isn't quite how that scene played out:

> THE COURT: But you were afforded an opportunity by the defendants to tidy up your pleadings and afforded that opportunity in April, and so now you tell me when I set it down for hearing for judgment on the pleadings that you want to be able to take my temperature on the judgment on the pleadings and then file another complaint?
>
> MR. SOLOMON: We didn't feel that we would be in a position with the Court, the defendants were asking us to do that. We didn't believe that the Court would entertain an amended complaint while the motion on the pleadings had been fully briefed.

Describing the district court's inquiry as a point-blank question as to why plaintiffs didn't do what defendants' letter said to is misleading. The question is far less direct than that, as the above excerpt shows. But the majority's treatment and view of this exchange actually clears up some confusion: The majority suggests plaintiffs' answer here is untrue, but that is because the majority frames the court's question differently than it was actually put to plaintiffs' counsel at the conference. By my reading, treating the "tidy up your pleadings" phrase as an introductory statement, not a question (because it isn't a question on its own), counsel believed he was answering the second portion of the district court judge's statement, which constituted the court's actual inquiry. It is clear to me that counsel's point -- that he worried the court wouldn't look favorably on a motion to amend while a dispositive motion was pending -- is fair,

- 33 -

particularly since defendants actually filed their dispositive motion in April. It simply is not an incorrect response, as the majority says.

The majority also says the district court "conclud[ed] that plaintiffs intentionally delayed in an effort to force the defendants to brief a motion and the court to do the work of deciding the motion." But defendants filed their motion only seven days after plaintiffs notified them they would not be amending their pleading, and defendants' ten-page, single-spaced April letter bears a resemblance to the dispositive motion defendants filed. It does not take a seasoned litigator to understand that defendants' April letter was, in large part, their motion. Moreover, defendants renewed arguments made in their earlier motion to dismiss as to the RICO claim. So plaintiffs' supposed "delay" in seeking amendment after rejecting the demands in defendants' letter did not force defendants to reinvent any particular wheel or flesh out brand new arguments when briefing the motion -- much of that work was already done. And even if this was not true, I spy nothing in the record (because there is nothing) which demonstrates that any such delay (once again, even assuming a two-month delay from the April letter to the court conference is the kind of delay our case law condemns in this context) was intentionally created, nor that it was created specifically with an eye towards later taking advantage of it.

The majority paints a picture in which plaintiffs "force[d]" defendants to file a motion and "force[d]" the court to do the work of deciding it, all while knowing they viewed their complaint "as a risk-free trial balloon." Again, this is an unfair mischaracterization of the record in this case. Plaintiffs said many times they believed their own legal arguments in support of the sufficiency of their complaint had merit, and that it was, up to a time, premature to amend the complaint. Plus, the majority conveniently ignores the fact that plaintiffs filed a twenty-page brief vigorously opposing defendants' dispositive motion substantively, as a matter of law, and they did this because they believed -- at the time -- they had viable legal footing for that position. If, as the majority seems to believe, plaintiffs had this nefarious "trial balloon" plan in place, they would not have gone to the trouble of drafting and filing a well-argued (though perhaps wrong in the end) substantive opposition.

My final point on this fourth offered reason responds to my colleagues' observation that the length of the delay (the undue delay reason Foman laid out) is less the problem than the perceived (but, in my view, unsupported) manner in which plaintiffs "seem to have exploited" that delay.[23] It's unclear to me what the

_____

[23] The majority points to two cases in support of this exploitation point. I fail to see how these cases relate to or support exploitation of delay as a reason to deny a motion to amend, and regardless, these cases do not persuade on the delay

- 35 -

exploitation is, but in any event, I do not share the majority's

impression of plaintiffs and I see no such exploitation. Moreover,

any supposed exploitation of (a mere two-month) delay is not delay

itself, and it does not fall under the Foman Court's vision of

undue delay as an example of a requisite "justifying reason." 371

U.S. at 182.

## 5. Plaintiffs ignored an express offer from the district court to file a formal motion to amend

As far as reasons to support the denial of the motion to

amend go, this one similarly falls short of the "justifying

reasons" that would do the trick. Here's what happened. The

---

piece. Villanueva v. United States, 662 F.3d 124, 127 (1st Cir. 2011), tackled a delay in moving to amend that related to information a plaintiff omitted from the complaint but was aware of before he even filed his complaint. Limiting itself to the "circumstances at hand," and even though "the four month period between the filing of the complaint and the request to amend may not on its face seem particularly long," this court concluded that no justification had been offered for that delay. Id. This holding was confined to the specific facts of the case, and those facts are not the same as those presented. Moreover, as I have written already, plaintiffs did offer reasonable justification for waiting to move to amend.

Next up, Kay v. New Hampshire Democratic Party, 821 F.2d 31 (1st Cir. 1987), cited by Villanueva, clearly explained that a motion to amend a complaint was properly denied "for the sole reason that such an amendment would have been futile." Kay, 821 F.2d at 24. In dicta, and again limiting itself to the particular facts of that case, this court explained that the justification for the amended complaint did not account for the three-month delay (after new information came to light) in moving for amendment "in this case." This dicta is unrelated to the circumstances of our case, it is not binding, and it is limited. And once again, I believe plaintiffs did offer valid reasons for waiting to move to amend.

district court judge repeatedly indicated that he would not permit amendment. At the close of the conference, the district court judge stated, "Well, I haven't had a pleading submitted to me, but I'm telling you ahead of time that having had this in front of me, that's what I'm going to do. Now if you want to test it by filing a new pleading, I suppose you can. That's up to you." So when plaintiffs were told, essentially, that "a written motion will be denied just like your oral motion has been denied, but sure, go ahead and file it if you want," little wonder they saw that route as futile and/or unnecessary. Plaintiffs took their cue from these statements and repeated denials, in conjunction with the court's same-day written denial on the docket. They did not file a written motion, clearly satisfied that their (validly made, they believed) motion had been flatly denied, any future filing had been preemptively denied, and any written motion would be, at best, futile or a waste of time and client money, or, at worst, Rule 11 sanctionable. Seems to me plaintiffs opting not to chart that course is understandable; it is not a reason to affirm the denial of their motion for leave to amend.

### Conclusion

Given that I see the majority's outcome as completely at odds with our case law and the spirit of our rules, I respectfully, but emphatically, **dissent**.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - -

DIANE HAMILTON, ET AL,                    -   ~~~~~ ~~~~~~

                                            -   No. 09-11461-

VS                                        -   No. 09-11725-

  PARTNERS HEALTHCARE SYSTEM, INC., ET
             AL., -

          DEFENDANTS                       -

STATUS/SCHEDULING CONFERENCE

JUNE 9, 2011

2:10 P.M.

BEFORE DISTRICT COURT JUDGE

DOUGLAS P. WOODLOCK

JOHN J. MOAKLEY U.S. COURTHOUSE

1 COURTHOUSE WAY

BOSTON, MA 02210

VALERIE A. O'HARA
OFFICIAL COURT REPORTER

- 38 -

2

A P P E A R A N C E S:

FOR THE PLAINTIFF:

Thomas & Solomon LLP, by PATRICK J. SOLOMON, ESQ. and JESSICA L. WITENKO, ATTORNEY, 693 East Avenue, Rochester, New York     14607


FOR THE DEFENDANT:


Littler Mendelson, P.C.,
by LISA A. SCHRETER, ATTORNEY, ANGELO SPINOLA, ESQ. and PATRICK J. SOLOMON, ESQ., 3344 Peachtree Road, Suite 1500, Atlanta, Georgia 30326


Littler Mendelson P.C., by DAVID C. CASEY, ESQ.,
One International Place, Suite 2700, Boston, Massachusetts 02110


ALSO PRESENT:    Julie Chattopadhyay, in-house counsel

- 39 -

3

PROCEEDINGS

THE CLERK:  All rise.  This Honorable Court is now in session.  You may be seated.  Calling Civil Action 09-11461 and 09-11725, Diane Hamilton vs. Partners Healthcare Systems Inc., et al.

MR. SOLOMON:  Good afternoon, plaintiff's counsel, Patrick Solomon and my colleague, Jessica Witenko for the plaintiffs.

MS. SCHRETER:  Good afternoon, your Honor, Lisa Schreter on behalf of Partners Healthcare.  I'm joined to my right by David Casey from our Boston office, Mr. Spinola to his right, and to his right is Julie Chattopadhyay, who's with the Partners Healthcare System in-house.

THE COURT:  Well, let me tell you how I think I'd like to proceed in this.  I want to set the motions for judgment on the pleadings down for July 27th, and I set that date, if there's a vacation problem, tell me, and I'll accommodate that, but that was what works for me.  Is that workable?

MS. SCHRETER:  I don't believe that's a problem, your Honor.

MR. SOLOMON:  I don't think that's a problem, your Honor.

THE COURT:  Okay.  Well, having tested you on that and being reminded by Mr. Lovett that that date does not work

for me, can I move it to August 3rd?

MS. SCHRETER:  That would be fine for us, your Honor.

MR. SOLOMON:  Fine for the plaintiffs, your Honor.

THE COURT:  All right.  So we'll set it down for August 3rd at 2:30.  Now I think I want to set virtually everything else off that with this exception that I do want to stay discovery in the further briefing on the certification motions until I've sorted through the state of the pleadings here.

As to consolidation, I'll consolidate it only to the degree that I'll hear the motions at the same time.  I want to see how it sorts out to see whether further consolidation is necessary in this case, and so to work my way through the outstanding motions, we've set No. 115 in the 09-11461 case down for August 3rd for hearing, and the parallel motion in 09-11725 will also be heard on that day, and to that degree, they're consolidated for hearing, and so to that degree I allow the motion No. 141 and the motion in support of the motion to consolidate the related actions solely for the purpose of the hearing and to stay discovery and the filing of briefing of certification motions until I've sorted through at that time, so it's allowed without prejudice to further refinement.

With respect to the motion to expedite, I want to

hear that on the same day as well.  All of this depends upon the nature of the pleadings in the case and whether or not they're going to successfully permit continuation of the case or some part of the case.

I have the defendant's motion to file supplemental authority that was just filed I guess today.  That's document No. 120, and that's allowed as well.  Now, let me understand the posture of Manning.  Is there any appeal in Manning now?  One part of it stayed alive, as I understood it, but maybe you can tell me.

MR. SOLOMON:  Sure.  There is an appeal, it's not fully briefed yet on the state law claims, preemption.

THE COURT:  The preemption one, it was the March decision that Judge Zobel had?

MR. SOLOMON:  That would have been Judge Saylor in the UMass.

MS. SCHRETER:  He's asking about Manning.

THE COURT:  I was asking about Manning.

MR. SOLOMON:  I'm sorry, yes, correct.  The status of Manning is that in the Caritas matter, there was an appeal that has been argued.  We submitted supplemental briefing for Circuit's request, and we're waiting on a decision on that.  The BMC matter, BMC, we've just filed amended pleadings.

THE COURT:  Because she permitted you to file amended pleadings.  You should understand I'm not going to

permit amended pleadings in this matter.  These are the pleadings.  We have been around on this enough, so this case will rise and fall on the state of the pleadings after two years.

MR. SOLOMON:  If I may be heard on that, your Honor, just briefly, very briefly, I would say.

THE COURT:  What do you want, do you want to rebrief the thing altogether?

MR. SOLOMON:  The case has taken a long time to get to a preliminary motion to dismiss stage, and the parties spent a long time in mediation, and as part of that mediation, we agreed as a courtesy to the defendants to dismiss the individual defendants.  That was never approved by the Court, so the individual defendants are still around, but there certainly has been a lot of case law change in the last two years, particularly in the District of Massachusetts.

THE COURT:  But you were afforded an opportunity by the defendants to tidy up your pleadings and afforded that opportunity in April, and so now you tell me when I set it down for hearing for judgment on the pleadings that you want to be able to take my temperature on the judgment on the pleadings and then file another complaint?

MR. SOLOMON:  We didn't feel that we would be in a position with the Court, the defendants were asking us to do that.  We didn't believe that the Court would entertain an

7

amended complaint while the motion on the pleadings had been fully briefed.

THE COURT: Well, what makes you think that I'll do it afterwards? Look it, I have taken several bites of this case. I've seen it in what I consider to be inappropriate posture for class settlement. I saw it originally in a motion to dismiss posture, but this is not going to be Shahrazad, so you now think you want to file an amended complaint?

MR. SOLOMON: We would anticipate that the Court would have since the motion was fully briefed, if there was --

THE COURT: No, I asked you, is it your view that you now are not satisfied with the pleading you've submitted?

MR. SOLOMON: Well, in light of the recent decisions that have come down, particularly yesterday, from Judge Saylor, we would request the ability to submit an amended complaint. All of the questions raised by the Court there are very easy for us to remedy, and it's far more efficient for the Court and for --

THE COURT: No, let me tell you, efficiency is when I say you don't get a chance to replead, and I'm about at that point. Now if you're telling me that you want to replead, I'll consider it, but this is it. You've had a great deal of litigation in a number of different fora. These are not new issues to be perfectly candid, they've been out there for some period of time, and I don't really fully understand why I

8

should permit this.

MR. SOLOMON:  Well, your Honor --

THE COURT:  What are you going to do?  What is it that provided an epiphany in Judge Saylor's decision?

MR. SOLOMON:  Well, the complaint was dismissed with prejudice.  That was the defining moment.  The courts have liberally allowed amendments to pleading.  When the case was initially filed, we had numerous cases where on these very similar pleadings, as the defendants point out, had been successful.  As the case law has been developing, courts are now raising the standard, it appears, as to what level of detail you need, but the situation that we're in --

THE COURT:  What are you going to do?  What is this amended complaint going to do?

MR. SOLOMON:  It would answer the questions that the courts have raised, it would provide additional detail as to who the defendants are.  We believe that we've sufficiently alleged that the defendants are this entity, but we can specifically allege, as we have in the 20 affidavits that were submitted with the notice motion, where these individuals worked, who supervised them and the type of work they did.  The evidence in this case is going to be extremely strong on behalf of these clients.

THE COURT:  Look it, you have to make it over the pleading hurdle, and now I schedule it for a hearing on your

pleadings, and you view this as kind of an interim undertaking that we'll see how this one turns out and then we'll ask for another pleading. You have to come to rest on your pleadings, and if you're telling me that if you have not come to rest on your pleadings, I want to understand what it is that you have recently learned that you didn't know before.

MR. SOLOMON: That the district courts in Massachusetts are looking for more specificity.

THE COURT: And the Southern District.

MR. SOLOMON: And the Southern District of New York are looking for more specificity as to the defendant that you specifically worked for, which location you worked at of this large entity, specifically perhaps the number of hours over 40 that you worked, what your job title was, details like that.

Those are details that we in the notice pleading that we've done in the past has never been subject to scrutiny and has been accepted.

THE COURT: Of course it has, it's been subject to scrutiny throughout, it was subject to scrutiny by Judge Zobel in Manning, it was subject of scrutiny by Judge Saylor, has been for some time. This is no big surprise, Iqbal has been around for awhile now, and this problem, which is a significant one, has been out there for some time, so I'm a little perplexed about the impact that this has on judicial

10

efficiency.

It's not as if I hadn't made clear, although I haven't been required to rule on much other than the inadequacy of the arrangement that the defendants and you reached for your own reasons, no doubt, to buy hospital peace, but you're going to have to explain to me why it is after I set the date for the judgment on the pleadings you now say that you want the opportunity to replead.

MR. SOLOMON:  The case law is very strong in our favor on the ability to amend a pleading post...

THE COURT:  No, it's not, not at this point.  Let me tell you something, there are anodynes for painful thought that can be found imbedded in cases about repleading that don't deal with the more specific circumstances of continued recourse to the Court to get some idea of what the case is about and the waiting until the last possible moment in a fashion that is going to interfere with the proper resolution of this case, so it's not going to be enough to tell me about how Rule 15 has forms of liberality with respect to pleading.

MR. SOLOMON:  The defendants have not taken a singular position against our complaint.  They've filed amended motions for judgment on the pleadings.  They have added additional arguments as we've moved along.  If this was the first day I filed one complaint and we were doing nothing at that point, I would understand.

11

THE COURT:  You don't think anything here has signaled the concern that you're now attempting to address? The idea that you've sued what could be viewed as a blob consisting of multiple entities, you haven't identified who it is who's the employer except in the most generalized terms. You think that's something new?

MR. SOLOMON:  I do.  Judge O'Toole in an early decision said it's a very lenient standard, there is a very lenient standard set in Massachusetts.  He had one minor change that he wanted us to do.  Nearly a year later a separate Judge in the District of Massachusetts raised the bar and said that --

THE COURT:  There was no raising the bar, but the point is that you haven't bothered to concern yourself with whether the bar has been raised or whether or not.  You've got vulnerabilities, you simply wait until I have to deal with this issue and then tell me that you want to throw sugar in the gas tank?

MR. SOLOMON:  That is not it at all.  We're not looking for the Court to guide us to tell us what, you know, to give us the feedback of how to plead the case.  We have now seen that the courts have taken a stance, and it seems to be in favor of more information than we've provided.  It is very simple information for us to provide.

THE COURT:  When you say simple, how quickly can you

12

replead?

MR. SOLOMON:   Probably within two weeks.

THE COURT:   No, no, two weeks, if it's so simple, I don't understand why it takes two weeks.

MR. SOLOMON:   It's only the press of business operations, your Honor.   We have many cases going on and court appearances.

THE COURT:   In which you're repleading?

MR. SOLOMON:   All sorts of manners, your Honor, but two weeks I don't believe would be a prejudicial amount of time to the defendants, and that would provide us sufficient time to set forth the details that the pleadings require, and I think that's a very quick turnaround that we can do that.

THE COURT:   Why is it a very quick turnaround when it's been kicking around for awhile?   I don't see that at all. I have to tell you that this is not the way that I think litigation should be conducted, and so what you're going to necessitate is the refiling of motions for judgment on the pleadings or to dismiss, right?

MR. SOLOMON:   I think the pleadings would -- either the amended complaint either answers the allegations in the pleadings or they --

THE COURT:   How are they going to present that to me, by new motion?

MR. SOLOMON:   I think the Court could just assess

13

it.

THE COURT:     I don't sit freeform as a kind of roving rit to decide which of the pleadings is okay without some assistance.   We do have an adversarial system, although one would wonder about that in light of the settlement agreements that the parties were prepared to proffer to the Court, but this is real litigation, and from my perspective, I want it done with rigor that so far has been lacking by the plaintiff and to some degree by the defendant in the gadarene rush to buy in hospital peace.

So you say two weeks.   It's going to require the filing of a new set of motions, I anticipate, and you have 20 named people.   Now that's not going to cover all of the defendants, is it?

MR. SOLOMON:   Your Honor, there are more than 300 people that have opted into the litigation.   There are 20 people from whom we've submitted affidavits for the notice motion.   There is not an affidavit that we have from every single location, that is correct.

MS. SCHRETER:   Your Honor, might I be heard on this?

THE COURT:   Yes.

MS. SCHRETER:   At every turn in this case, plaintiffs have vacuously multiplied these proceedings.   We sent them a letter detailing each of the grounds on which we intended to move to dismiss.   There's nothing new here.   There

are no new facts that the plaintiffs obtained.  They could have put these facts in from the beginning.  They were confronted with these arguments through the mediation process, and they made a deliberate decision.  Judge Saylor noted this in his decision not to plead these facts, so we would strenuously oppose any ability on their part now that we have moved for them to kind of waltz back in here and seek to amend their pleadings as an afterthought.

If you look even at their motion for conditional certification, it's classic.  In the motion for conditional certification, they've added in a defendant they dismissed. There are people who they have submitted consents from who have no relationship to Partners, and all this time they continue to solicit individuals on behalf of this case for all of these different entities who they didn't even bother to serve and name as named defendants, so we would rigorously oppose any effort on this kind of 11th-hour attempt to amend this, your Honor.

THE COURT:  Well, I'm not going to permit the amendment.  It's going on this complaint.  You've had plenty of time.  You've been put on notice of potential deficiencies here including a very detailed letter from the defendants calling to your attention their intention to file judgment on the pleadings, and you ignored it on the benighted assumption that there was going to be some continued opportunity for

15

resurrection.  This is the pleading.  I'll evaluate this pleading.  If I think it is insufficient, I'll dismiss, enter judgment on it, but there's not going to be a repleading at this stage after all of this.

So we're on for August 3rd.  Is there anything else that we need to take up here?

MS. SCHRETER:  Not on our behalf, your Honor.

MR. SOLOMON:  Not on our behalf, your Honor.
Please note my exception to the Court's ruling.

THE COURT:  Well, I haven't had a pleading submitted to me, but I'm telling you ahead of time that having had this in front of me, that's what I'm going to do.  Now if you want to test it by filing a new pleading, I suppose you can.  That's up to you.  It's not as if you haven't filed lots of paper, but this is a fairly serious matter to file late like this and not bother to take the time to plead it as fully as the developing case law suggests and to wait until the last moment to hold out the prospect that perhaps you will in two weeks.  Not acceptable.  We're in recess.

THE CLERK:  All rise.

(Whereupon, the hearing was suspended at 2:45 p.m.)

C E R T I F I C A T E


UNITED STATES DISTRICT

DISTRICT OF                    )

CITY OF                        )


I, Valerie A. O'Hara, Registered Professional Reporter,

do hereby certify that the foregoing transcript was

recorded by me stenographically at the time and place

aforesaid in Nos. 09-11461-DPW and 09-11725-DPW, Diane

Hamilton vs. Partners Healthcare System, Inc., et al.

and thereafter by me reduced to typewriting and is a

true and accurate record of the proceedings.


                                         _____

                                         VALERIE A. O'HARA

                                         REGISTERED PROFESSIONAL

                                         REPORTER DATED JUNE 10, 2011


                                         _____